And our next case for argument this morning is United States v. Brian Broadfield. Mr. Drysdale, good morning. Good morning, Your Honor. May it please the Court. My name is Tom Drysdale. I'm from the Federal Defender's Office and I'm here today on behalf of Brian Broadfield. The sole issue before the Court is whether the District Court impermissibly relied on the seriousness of Mr. Broadfield's conduct as the driving factor behind its 16-month revocation sentence. Now, I don't think there's a lot of dispute as to what the law is, at least right now in the Seventh Circuit. 18 United States Code 3583e sets out the factors that may be considered in imposing a revocation sentence and noticeably absent is 3553a2a. And what this Court has said is due to the overlap between the seriousness of the offense and the need to impose punishment with other factors, it can be considered, it just cannot be the driving factor behind the District Court's sentence. So the question that is before the Court today is when we look at what the District Court said in imposing a sentence on Mr. Broadfield, was his conduct or the seriousness of it the driving factor? The Supreme Court has granted certiorari to consider whether our decision in Wiltshire, which is what you're referring to, is correct. Should we wait for the Supreme Court's decision in Asteros? I don't think so, Your Honor, because we believe, at least at the moment under the Court's current precedent, that Mr. Broadfield can prevail because this sentence was the driving factor. Of course, you don't discuss this Court's most recent precedent on this subject, which is the Townsend case. Your briefs don't mention Townsend, although one would have thought that was pretty important. Your Honor, I think in the briefs we mention a myriad of cases that this Court has decided on this issue, Wiltshire, Martin, and several other cases that this Court has dealt with, and looking at the Court's precedent being was it the driving force behind the District Court's sentence. And I think that's the question that we need to answer today, and I think when we look at what the District Court said in imposing the sentence— The initial question I asked you was whether we need to answer any question. Asteros will be argued in the Supreme Court in two weeks. Should we wait for it? Why should we decide something under Seventh Circuit precedent that may not be long for this world? Your Honor, you shouldn't wait for it, because the answer is either this Court's precedent is going to be upheld and the driving force analysis is going to be correct, or the Court will have not been allowed to rely at all on 3553A2A. Oh, no. You are obviously not acquainted with the briefs in Asteros. I am, Your Honor. Well, those aren't the only two options before the Supreme Court in Asteros. I understand that, Your Honor, but the other reality for Mr. Broadfield is that he's going to be released from custody in May. And so looking at his availability for any real relief, it's highly unlikely that Asteros is going to be decided prior to his release from custody. Okay, that I understand. That's a better reason. Thank you. Certainly, Your Honor. And so looking at the merits of this case, we look and we see that the district court relied almost exclusively, if not exclusively, on the seriousness of Mr. Broadfield's conduct, starting right off the bat with the district court seeming to acknowledge that it has never heard of the argument that 3553A2A is not part of the revocation sentencing process, and then doubling down and saying that it cannot impose a revocation sentence without considering 3553A2A, because it's, quote, absolutely bedrock. Then we look at the transcript at 52. The district court said what you did here was very, very serious. Then we go to 54, where the district court goes on for an entire paragraph about the seriousness of the conduct. He calls it really bad. The district judge then details everything Mr. Broadfield did the night he was arrested and finishes up by saying, oh, my, that's bad. And even in acknowledging Mr. Broadfield's allocution statement, the district court immediately returns to the offense conduct. Could you perhaps now come back to Townsend? Because we held in Townsend that when a district court recites the facts and circumstances of the offense and says, oh, my, that's bad, there isn't any problem under Wiltshire. And you seem to be saying there is a problem under Wiltshire. Do you think we should overrule Townsend? No, Your Honor, and I think that standing alone with the district court reciting the facts of the offense and saying, oh, my, that's bad, that that alone doesn't create the Wiltshire error or an error under Townsend. I think what our point is is when you take that, you combine it with the other things that the district court said or miraculously did not say, combine it with the government's argument, which only focused on the seriousness of the offense, then that puts us in a situation where we have a Wiltshire error. And that's precisely what the government is trying to do here on appeal is what this court said was not OK in Wiltshire. The government is trying to come up with belated explanations for the district court's statements that appear, frankly, nowhere in the transcript. You know, the government says in its brief that, quote, Mr. Broadfield's lack of response to probation's efforts to assist him hindered the goal of deterrence, which in turn had public safety implications. That's the government's brief at 29 to 30. That's absolutely nowhere in the transcript. Those are the government's words, their explanations. The government also claims that the district court concluded that Mr. Broadfield's conduct was, quote, inextricably intertwined with other permissible Section 3553A factors. Again, the district court did not say those words. That's the government coming up with explanations that aren't in the transcript. In fact, the court said the opposite of that. It was not aware that 3553A2A was excluded, and in any event it cannot impose a sentence without considering it. And in fact, the district court at the end, when trial counsel preserved this argument for appeal, went a step further and openly disagreed with the omission of 3553A2A from 3583, saying, quote, with all due respect to the Congress of the United States, the court could not impose a sentence in this case or any case without considering the seriousness of the offense. So I think when we look at the words, we look at the government's arguments, we look at the district court openly disagreeing with the exclusion of this factor from 3583, I think this puts it in the world of Wiltshire, where there is just nothing in this record that can be gleaned from the transcript, from the district court's words, to show that the driving force was not the seriousness of this offense. And I think that's the last point I want to make before I reserve time for rebuttal, is it does not have to be the sole consideration. It must be the driving force. So I understand that the district court does make some other statements that, frankly, aren't really tied to anything, like statements about mental health treatment and statements about Mr. Broadfield's attitude, but the court never says, and your attitude leads me to believe that the public is in danger or anything like that. It just says it reflects a certain attitude. So when we look at this whole record, I think it's pretty clear that the driving force behind this sentence was the seriousness of Mr. Broadfield's conduct. If the court has no more questions, I will reserve my time. Thank you. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel, my name is Kathryn Boyle on behalf of the United States. The district court here didn't procedurally err in sentencing the defendant to a below-guideline sentence of 16 months. Listening to the defense counsel's argument today, it sounds like at certain points we are looking at a different transcript. Here the transcript shows that the court relied on permissible factors in sentencing the defendant. Although the court discussed the seriousness of the offense, the sentence largely turned on the defendant's violation of the court's trust, which it described as a major consideration, and other permissible factors. That was appropriate. As the court recognized in Townsend, and as the district court recognized here in saying that the seriousness of the offense was, in some respects, bedrock, it is practically impossible to separate the seriousness of the offense from saying something Ms. Boyle, I'd like to ask you the same question I asked your adversary. Should we wait for a steris since the Supreme Court has this issue before it? Your Honor, I think it could be wise to wait for a steris. The Supreme Court does have this issue before us, and they're making a number of wide-ranging arguments in the solicitor general's brief. I do recognize that Mr. Broadfield in this case has a release date in May 2025, and that may be a reason the court would choose to continue anyways. Okay. Thank you. You're welcome. So it was appropriate for the court, given what we think is appropriately described as the inextricable intertwinement of factors like seriousness of the offense with the nature and circumstances of the offense, respect for the law with deterrence. This is a situation where when you look at the transcript, the district court may not always use the exact word deterrence, but the district court very, very clearly articulates that that is one of the things it's concerned about. It says the defendant has mental health problems, but he's declined to get treatment. Probation is attempted multiple times. I'm not sure what else we can do about this, and notes that he's concerned that the defendant's behavior is going to continue without addressing these mental health problems. The court says on page 55, I'm concerned about what you'll do in the future. That goes to protection of the public. It goes to deterrence. It goes to all of these factors that defense counsel is saying that the district court didn't consider. The court notes Mr. Broadfield's statement. Was the judge also able to consider the nature and circumstances of the violations? Yes, Your Honor, I believe so. And did he consider those as well? Yes, I believe that's one of the reasons the court in this case did spend some time. And, you know, here it's interesting. The nature and circumstances of these violations did have, they were intertwined also with this deterrence idea in that the violations here included resisting arrest. The violations here included flooding a holding cell that then flooded into the booking area of a jail. The defendant then had to be carried from this holding cell to another cell where he urinated and smeared feces under the door. And this was seven hours after the defendant had stopped drinking. The government presented an audio recording of a phone call at this, where the defendant exhibited a lack of respect for law enforcement and used a number of pejorative words and swear words. And this does overlap with the idea, can you obey the law? Can you obey your conditions of supervised release? Are you going to be a danger to the public in the future? Can we deter you from this criminal conduct? And as the court also appropriately recognized when raised by defense counsel during the hearing, it matters the nature and circumstances of the offense and the seriousness of the conduct is correlated. As this court has recognized in multiple prior cases, like Clay and Martin, it's correlated with the severity of the breach of trust that the court has in the defendant to follow these conditions of supervised release. The court has on a number of occasions recognized that the district court may consider the seriousness of the offense given the overlap. So has the Sentencing Commission, which has directly said the court should sanction primarily breach of trust while taking into account to a limited degree the seriousness of the underlying offenses. Here, the seriousness of the offense was so overlapping with these other factors, nature and circumstances, deterrence, that it was not possible, as the court recognized, and the court correctly recognized that it was permitted to consider the seriousness of the offense in its sentencing. That is completely affirmed by this court's case law, and it was not an incorrect statement of the court's discretion. If Your Honors have no further questions, the government will rest on the arguments in its brief and ask that the court affirm. Thank you. Thank you, Your Honors. Mr. Drysdale, anything further? Just briefly, Your Honor, to touch on two points. The government's really hanging its hat here on the district court's discussion of mental health treatment that Mr. Broadfield didn't accept for probation. But there's no discussion by the district court of what permissible Section 3553A factor that ties into, and the government cannot make it up from the record. That's Wiltshire. The district court simply says that Mr. Broadfield has mental health problems and that probation tried to help him, and then just concludes that that says Mr. Broadfield has an attitude. That's it. The court doesn't say that suggests that you're dangerous to the public, that suggests that you're going to do this again, that suggests that you're going to violate your next term of supervisory lease. It just says it suggests to me that you have an attitude, and then the court turns around, I think, and ties that attitude back into Mr. Broadfield's conduct. So, again, to go back to Wiltshire, the court would have to indicate how that attitude interacts with a relevant sentencing factor, which it simply didn't do. And to the government's point about how the district court, just because I think it won possibly two points, used the term breach of trust. Number one, it wasn't until defense counsel used that term. But number two, if you look at the transcript at 52, the court talks about how it imposed the original term of supervisory lease to build trust over time. And that, again, right there is the court conflating the purposes of an original sentencing and its permissible factors with the purposes of a revocation sentence and what you can and cannot do. So the fact that the court, and this is this court's opinion in Dawson, the fact that the court used the term breach of trust means very little if the record shows that the court did not actually apply that theory. So we ask that this court reverse and remand for resentencing. Thank you. Thank you. All right, thanks to both counsel. The case is taken under advisement.